UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARK D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:23 CV 285 JMB |
| | ) | |
| MARTIN J. O'MALLEY, | ) | |
| Commissioner of Social | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of an adverse ruling by the Social Security Administration.  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I.  Procedural History**

On August 28, 2019, Plaintiff Mark D. filed an application for disability benefits, alleging that his disability began on November 1, 2016, because of ruptured discs in his back, asthma, subacromial bursitis and hemorrhage, diverticulitis, breathing dyspnea, a broken wrist, a severed but reattached finger, and post colon and brain surgery.  He amended his onset date to June 18, 2018 (Tr. 108).  On February 6, 2021 and June 14, 2021, respectively, Plaintiff's claims were denied upon initial consideration and reconsideration (Tr. 94, 107).  Plaintiff requested a hearing before an ALJ (Tr. 127-128).  Plaintiff appeared at the hearing (with counsel) on January 12, 2022, and testified about the nature of his disability, his functional limitations, and his past work (Tr. 51-75).  The ALJ also heard testimony from Jason Purinton, a vocational expert ("VE") (Tr. 67-74).  After considering Plaintiff's and the VE's testimony, and after reviewing

the other relevant evidence of record, the ALJ issued a decision on February 15, 2022, finding that Plaintiff was not disabled, and therefore denying benefits (Tr. 13-34). Plaintiff sought review of the ALJ's decision before the Appeals Council of the Social Security Administration (Tr. 184-185). On January 20, 2023, the Appeals Council denied review of Plaintiff's claims, making the February 15, 2022, decision of the ALJ the final decision of the Commissioner (Tr. 1-7). Plaintiff has therefore exhausted his administrative remedies, and his appeal is properly before this Court. See 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

### A. Disability and Function Reports and Hearing Testimony

Plaintiff was born in February 1956 and was 62 years old on the alleged onset date (Tr. 189). He lives in a house with his wife (Tr. 236). He is a high school graduate (Tr. 225). He has had sporadic earnings since 1974, occasionally going years without any earnings, and has had regular earning from 2006 but never more than $16,000 per year (Tr. 198). He has worked in car sales, roofing, and as a stagehand (Tr. 226).

In Plaintiff's March 26, 2021, Function Report (Tr. 256-267), he essentially states that he can shower and use the bathroom but that he is otherwise dependent on his wife for everything else including cooking, dressing, housework, yardwork, shopping, taking medication, and travelling for doctors' appointments. He does go out once a day for fresh air but otherwise watches T.V. He has difficulty in almost all areas of functioning including standing, walking, concentrating, understanding, following instructions, and hearing. He states that he is in pain all the time, cannot handle stress well, and has trouble sleeping because of pain. Plaintiff's wife assisted in completing a prior Function Report, dated February 18, 2020, in which Plaintiff reported similar but not identical functional limitations (Tr. 236-246).

Plaintiff testified at the January 12, 2022, hearing that he is prevented from working because of brain surgery, poor memory, back problems, hearing problems, and vision issues (Tr. 59).  He experiences pain in his shoulder blades to his upper neck and right arm since 2009 (Tr. 59-60).  He states that on a scale of 1 to 10, with 1 being no pain and 10 being excruciating pain, he is a level 9 without medication and a 6 or 7 with medication (Tr. 60).  Plaintiff does not use an assistive device and none of his treating doctors have communicated with him about future treatments, surgeries, therapies, or medication (Tr. 61).  Plaintiff indicates that he takes Hydrocodone, Gabapentin and Amlodipine which make him drowsy (Tr. 62).  He does not sleep well at night because he has trouble getting comfortable (Tr. 62).  He prepares no meals, does not care for others, does no housework, but is able to manage self-care (tr. 63-64).  He can walk around the block but would be exhausted afterwards and would need to recline his head back to alleviate neck pain (Tr. 64).  He usually reclines with his head back 4-5 hours a day (Tr. 66).  He states that he is forgetful and that his wife keeps track of his appointments.

Vocational expert Jason Purinton was asked to testify about the employment opportunities for a hypothetical person of Plaintiff's age, education, and work experience who was able to perform light exertional work, bilaterally occasionally reach overhead, occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally stoop, kneel, crouch, and crawl, and never work at unprotected heights or operate hazardous machinery (Tr. 71).  He testified that such a person could perform Plaintiff's past work as an automobile salesperson as generally performed, but not as Plaintiff performed the job (which was at a medium exertional level) (Tr. 71).  If the hypothetical were limited to someone who is limited to simple routine and repetitive work, then the past relevant work would be eliminated (Tr. 72).  Mr. Purinton further testified that if the hypothetical person were limited to sedentary work, then

he would have no transferrable skills without vocational adjustment (Tr. 72). Finally, Mr. Purinton indicated that workplaces would tolerate, at most, 15% off task behavior (Tr. 73).

B.   **Medical and Opinion Evidence**

In March, 2017, Plaintiff had surgery on his left shoulder to remove fluid that may have been infected and that was causing severe pain and difficulty moving (Tr. 715). The surgery appeared successful as Plaintiff "had no real pain" with range of motion movements 1 week after the surgery (Tr. 706).

On October 25, 2017, Plaintiff began treatment with Dr. Idelle Woodson and presented with chronic neck pain that had recently worsened (Tr. 392). While he did not appear to be in acute distress and had a normal range of motion in his neck with no tenderness, he was positive for neck pain and upper arm parasthesias (Tr. 394-395). At the time, Plaintiff did not have health insurance, so the plan was limited to continuing pain medication (Norco) and a referral to neurosurgery and/or pain management pending resumption of insurance (Tr. 395). At a follow up appointment on February 15, 2018, Dr. Woodson noted that his cervical spine MRI showed "extensive degenerative changes" and that Plaintiff requested surgery for his neck pain (Tr. 399). He was referred to neurosurgery (Tr. 402). Plaintiff saw Dr. Stanley Martin (a surgeon) on February 27, 2018 (Tr. 723). Dr. Martin noted that Plaintiff complained of severe pain in his neck and arms, mostly on the right, that developed in 2009 and for which cervical spine surgery was suggested but was declined (presumably for financial reasons) (Tr. 723-4). Upon examination, Dr. Martin found that Plaintiff had "fairly normal range of motion without tenderness" in his neck and "no palpable neck masses or adenopathy," and "good strength" in his extremities (Tr. 726). When Dr. Martin reviewed his cervical spine MRI, he found that Plaintiff had mild to moderate stenosis and mild degenerative changes (Tr. 726). Dr. Martin discussed

Plaintiff's options, including an anterior cervical diskectomy with fusion and plate at the C5-6 and C6-7 levels (the stenosis of which he believed was the source of Plaintiff's pain) or continuation of conservative therapy (Tr. 727).

He was subsequently referred to pain management in December 2018 by Dr. Woodson (Tr. 419).  Prior and subsequent physical examinations by nurses in July 2018, October 2018, March 2019, and May, 2019 (for minor complaints unrelated to neck pain), showed no abnormalities (Tr. 407-408, 411, 422, 425).

Plaintiff was seen by Dr. Christopher Patton (pain management specialist) upon referral by Dr. Woodson on January 18, 2019 (Tr. 486).  Plaintiff reported constant and severe pain in his neck, right shoulder, and right arm that initially began in 2009 (for which he tried physical therapy and a chiropractor which were unsuccessful in relieving pain) (Tr. 486).  The pain is aggravated by activity, sitting, and driving, but relieved upon standing; he takes Norco four times a day (Tr. 486).  Plaintiff indicated that he did not want to have the surgery suggested by Dr. Martin (Tr. 487).  Dr. Patton reviewed his MRI, noting mild and severe stenosis in his cervical spine (Tr. 492).  Dr. Patton referred Plaintiff to physical therapy (PT), prescribed Gabapentin for burning pain, and suggested that Plaintiff wean off Norco (which is an Opioid); he also suggested an epidural if the PT and pain medication were not working (Tr. 492-493).  At a follow up on February 27, 2019, Plaintiff indicated that the PT and medications were not working (Tr. 499).  He had decreased range of motion and tenderness in his cervical spine but the physical exam was otherwise normal (Tr. 502).   On April 25, 2019, Plaintiff received a cervical epidural to relieve his neck pain (Tr. 377, 382).

By June 14, 2019, Dr. Patton indicated that Plaintiff had "much improvement" in pain on the left side from home exercise, PT, and Gabapentin but that he still had severe pain in the right

forearm (Tr. 510).  He also indicated that the cervical epidural "does not appear to have made a big difference" and that medication makes his drowsy (Tr. 510).  Dr. Patton recommended that Plaintiff continue with medication, that he try an alternative to Norco, Nucynta, that he try Butrans if that does not help, and that he follow up (Tr. 515).  By October, 2019 he was "more active" but was not going to go back to work (Tr. 523).  Plaintiff reported that Butrans helped but Nucynta was too expensive (Tr. 523).  Dr. Patton continued the course of treatment (medication, physical therapy, and home exercise) at this appointment and the next appointments in April 2020 (where Dr. Patton indicated that Plaintiff's left side pain had resolved) and May 2020 (Tr. 528, 535, 541, 554).[1]

On August 7, 2020, Plaintiff indicated that he could not sleep due to pain, that the Burtran patches were causing a rash, that Nucynta did not help, and that the reduced dosage of Norco did not last (Tr. 559).    During this, previous, and subsequent visits, Dr. Patton's examination was identical: slight decrease in cervical range of motion, normal strength and grip, and tender cervical paraspinals, levator scapula, and trapezius upon palpation (Tr. 565-564).  Dr. Patton continued the treatment plan (home exercise and Gabapentin) but increased the dosage of Norco (Tr. 565) – this plan was continued in November 2020, February, 2021, May, 2021 June, 2021, and August 2021 (Tr. 579, 605, 652, 659, 688).  In each of Dr. Patton's records, near identical information is presented: Plaintiff has constant and severe pain in his neck, right shoulder, and arm, the physical examination is identical, Dr. Patton encourages him to wean off

---

[1] In between his appointments for neck pain, Plaintiff underwent a frontal AVM (brain surgery for arteriovenous malformation) in July, 2018 (Tr. 365) to address complaints of headaches.  There do not appear to be any complications or lingering negative effects from this surgery.  And, after waxing two cars in a squatted position, he appeared at an appointment with Dr. Nileena Philip on September 19, 2019 for soreness in feet and toes (Tr. 430). It is noted that he was seeking pain management for his neck pain that was not fully controlled (Tr. 430).

narcotic pain relievers, and a course or treatment including Gabapentin, Norco, and home exercises is prescribed.

Plaintiff was examined by consultive expert Dr. Ocheowelle Okeke on March 14, 2020 (Tr. 454-463).  Plaintiff reported significant pain in his neck, back and right arm, difficulty breathing, loss of hearing, and poor memory (Tr. 454).  Dr. Okeke's physical examination was generally normal: Plaintiff's range of motion was normal (except as noted below), he did not have problems grasping, lifting personal belongings, walking, squatting, standing up, hopping, hearing at a conversational level, and he was alert and cooperative during the examination with good concentration (Tr. 456-457).  However, Dr. Okeke noted that he had tenderness in his shoulders, elbows, and hands, shortness of breach with exertion and lying flat, and some limited range of motion in his cervical spine (Tr. 460).  A psychological examination was also conducted by consultive expert Dr. Alan Politte on July 10, 2020 (Tr. 467-472).  Dr. Politte concluded that health issues precluded Plaintiff from working and that in order to work, he would need medical improvement and additional skills (Tr. 471).  It is at least unclear (or missing) from Dr. Politte's report whether any of his conditions or lack of ability to work was related to any psychological problems.

## III.  Standard of Review and Legal Framework

To be eligible for disability benefits, plaintiff must prove that she is disabled under the Act.  See Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A)

and 1382c (a)(3)(A).  A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Social Security Administration has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § 404.1520; Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009).  Steps one through three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment.  Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009); see also Bowen, 482 U.S. at 140-42 (explaining the five-step process).  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.  Pate-Fires, 564 F.3d at 942.  "Prior to step four, the ALJ must assess the claimant's residual functional capacity (RFC), which is the most a claimant can do despite her limitations." Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)).  At step four, the ALJ determines whether claimant can return to her past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past."  20 C.F.R. § 404.1520(e).  The burden at step four remains with the claimant to prove her RFC and establish that she cannot return to her past relevant work.  Moore, 572 F.3d at 523; accord Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005).  If the ALJ holds at step four that a claimant cannot return to past relevant work, the burden shifts at step five to the Administration to establish that the claimant maintains the RFC

to perform a significant number of jobs within the national economy.  Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001); see also 20 C.F.R. § 404.1520(f).

The Court's role on judicial review is to determine whether the ALJ's finding are supported by substantial evidence in the record as a whole.  Pate-Fires, 564 F.3d at 942. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high."  Id.  Stated another way, substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."  Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same).  In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision.  Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration."  Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)).  Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision."  Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).  The district court must "also take into account whatever in the record fairly detracts from that decision."  Id.; see also Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (setting forth factors the court must consider).  Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record.  Buckner v. Astrue, 646

F.3d 549, 556 (8th Cir. 2011).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.  Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## IV.  The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above (Tr. 16-30).  The ALJ found that Plaintiff met the insured status requirements through June 30, 2021, and had not engaged in substantial gainful activity since November 1, 2016 (Tr. 19).  At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine with radiculopathy and arteriovenous malfunction (AVM) status-post embolization (Tr. 19).

The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment (Tr. 23).  The ALJ specifically addressed listing 1.15 (disorders of the spine) and 11.04 (brain disorders) (Tr. 23-24).

The ALJ next determined that Plaintiff had the RFC to perform light work, except that he can lift and carry and push and pull twenty pounds occasionally and ten pounds frequently; he can sit, stand and/or walk six hours each in an eight-hour workday; he can occasionally reach overhead to the left and right; he can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; he can occasionally stoop, kneel, crouch and crawl; he must avoid concentrated exposure to vibration; and, he must avoid all exposure to work at unprotected

heights and operating hazardous machinery (tr. 24).  In assessing Plaintiff's RFC, the ALJ summarized the medical record; written reports from Plaintiff; Plaintiff's work history; and Plaintiff's testimony regarding his abilities, conditions, and activities of daily living.  (Tr. 24-30).

At step four, the ALJ concluded that Plaintiff is capable of returning to his past relevant work as an automobile salesperson (Tr. 29). Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from November 1, 2016 to February 15, 2022 — the date of the decision (Tr. 30).[2]

## VII.  Discussion

Plaintiff argues that the ALJ erred in failing to find additional severe impairments, in finding that he can perform light work, in holding that he could return to his past relevant work, and in failing to develop the record and support her conclusion with specific findings.

At step 2, the ALJ must determine whether Plaintiff has "a severe medically determinable physical or mental impairment" or "a combination of impairments that is severe," and which has or is expected to last at least twelve months.  See 20 C.F.R. §§ 416.909; 416.920(a)(4)(ii).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimants' physical or mental ability to do basic work activities."  Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).  As noted above, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease of the cervical spine with radiculopathy and arteriovenous malfunction status-post embolization.  Plaintiff argues that the ALJ should also have found that he suffered from other severe conditions including diverticulosis and chronic urgency to use the restroom; fractured right wrist and reattached finger; and, anxiety and somatic system disorder.

---

[2] In light of this conclusion, the transferability of skills is not an issue.  See 20 C.F.R. § 404.1568(d)(4).

The ALJ found that Plaintiff's bowel issues were not severe because he did not receive ongoing treatment, he was not hospitalized for any related conditions, there is no record documenting his complaints or need to frequently use the restroom, and there are no physician findings of work-related limitations due to these conditions (Tr. 19).   Plaintiff does not specifically challenge these findings.

As to his wrist and finger, the ALJ found that there are no records containing additional complaints about these conditions and Plaintiff told Dr. Politte that he did not have any ongoing issues or problems with his wrist and finger (Tr. 19-20).   Again, Plaintiff does not cite to any part of the record that contradicts the ALJ's finding.

Finally, as to Plaintiff's anxiety and somatic system disorder, Plaintiff states that they caused insomnia, loss of memory, and loss of smell.   The ALJ found, however, that these conditions only caused minimal functional limitations, that none of Plaintiff's functional limitations were caused by mental disease, and that Plaintiff did not receive ongoing or frequent treatment from mental health professionals (Tr. 20-21).   Moreover, the ALJ found that there is no medical finding supporting his claim of loss of memory, and, essentially, that the insomnia or loss of smell did not lead to functional limitations (noting that Plaintiff has no limitations in concentrating, persisting, and maintaining pace, or other broad areas of mental functioning) (Tr. 21-22).

Plaintiff has the burden of demonstrating that he suffers from a severe disability.  Bowen v. Yuckert, 482 U.S. 137, 149-150 (1987).[3]   Plaintiff has not met his burden as to these

---

[3] Defendant cites Bowen, 482 U.S. at 156-157, for the proposition that "the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe" (Doc. 16, p. 5).  Thus, Defendant argues that even if the ALJ erred in failing to find various conditions severe, the error is harmless so long as the ALJ moves on to steps 3 and 4.  Defendant misstates the case.  First, the cited pages, 156-157, are from Justice Sandra Day O'Connor's concurring opinion and do not represent the holding of the Supreme Court.  Second, the quoted language is not contained in Justice O'Connor's concurring opinion nor in the opinion of the Court – nor can the language be a paraphrase of the holding of the Court or Justice O'Connor's concurring

conditions, even though the burden at this stage is not onerous or great. <u>Caviness v. Massanari</u>, 250 F.3d 603, 605 (8th Cir. 2001). Nor has Plaintiff demonstrated that any of these conditions meet or equal a listed impairment, which would automatically lead to the conclusion that he cannot engage in substantial gainful activity. <u>Pate-Fires v. Astrue</u>, 564 F.3d 935, 942 (8th Cir. 2009) (noting that the claimant bears the burden on steps 1 to 3 in the sequential process).

Plaintiff next argues that the ALJ erred in finding that he could perform light work. In making his argument, Plaintiff relies entirely on Dr. Politte's opinion that Plaintiff cannot work. In addressing Dr. Politte's opinion, the ALJ stated:

> As for the claimant's prognosis, Dr. Politte noted it would seem unlikely that there will be any major positive improvements in his life. The claimant's physical issues, as well as the claimant's belief he is too old, seem to preclude him being reemployed (Exhibit 7F, p. 8). The undersigned does not find the assessment by Dr. Politte persuasive. If Dr. Politte intended to state that the claimant could not perform any substantial gainful activity, (past relevant work as well as other occupations within the appropriate exertional category existing in significant numbers in the local or national economies), there is no evidence to indicate that Dr. Politte is a vocational expert as well, or that his determinations are based upon the same criteria as that used by the Social Security administration. The issue as to whether the claimant is disabled involves mixed medical, vocational and legal issues. The fact that physicians are experts in only one of those three areas may explain why their opinions are not always entitled to controlling weight. Further, such a statement is a medical source opinion regarding an issue reserved to the Commissioner. Therefore, such statements are not entitled to special significance, 20 CFR 404.1527(e), 20 CFR 416.927(e). The opinion by Dr. Politte is consistent

opinion. Defendant's reliance on <u>Bowen</u>, and subsequent district court cases relying on the case in error, is misplaced.

    In <u>Nicola v. Astrue</u>, 480 F.3d 885 (8th Cir. 2007), the ALJ at step 2 found that the claimant suffered from a variety of severe physical conditions including Raynaud's syndrome and degenerative disc disease, among others, and ultimately found, at step 5, that the claimant was not disabled. On appeal, the claimant argued that the ALJ erred at step 2 in "failing to include her diagnosis of borderline intellectual functioning as a severe impairment." <u>Id</u>. 887. The Commissioner conceded that the ALJ erred in failing to include this condition; however, he argued that the error at step 2 was harmless. <u>Id</u>. The Court rejected this argument. The Court found that the Commissioner failed to conduct psychiatric evaluations and reviews at all stages of the administrative process and that this failure, in addition to the error at step 2, warranted remand. Certainly, <u>Nicola</u> can be read to mean that an error at step 2 may not be harmless even if the ALJ proceeds to the remaining steps.

    The more accurate statement, and one that is adopted by this district and consistent with <u>Nicola</u>, is that "a failure to find an impairment severe at step two 'may be harmless where the ALJ continues with the sequential evaluation process and considers all impairments, both severe and non-severe.'" <u>Summers v. Kijakazi</u>, 2023 WL 2707442, * 6 (E.D. Mo. 2023) (quoting <u>Haley v. Colvin</u>, 2014 WL 117575, *10 (E.D. Mo. 2014). In this case, the ALJ did just that. Accordingly, any failure to consider an impairment severe is harmless error.

with a finding that the claimant does not have a severe mental impairment, but is
not consistent with a finding of disability due to physical impairments, as the
clinical findings are mostly normal and do not show findings that preclude light
work (Tr. 21).

Plaintiff states that the ALJ provided no "legal basis" for this conclusion. As pointed out by
Defendant, it is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical
and non-medical evidence of record. 20 C.F.R. §§ 404.1546, 416.945, 416.946. When
evaluating opinion evidence, the ALJ is no longer required to give controlling weight or any
weight to opinion evidence. 20 C.F.R. 404.1520(a). Instead, the ALJ is to consider all medical
opinions equally and evaluate their persuasiveness according to several specific factors. 20
C.F.R. § 404.1520c(b)(2). Of these factors, an ALJ must explain how she considered the factors
of supportability and consistency in her decision but need not explain how she considered the
other factors. 20 C.F.R. § 404.1520c(b)(2).[4] The supportability factor provides that "[t]he more
relevant the objective medical evidence and supporting explanations presented by a medical
source are to support his or her medical opinion(s) or prior administrative medical finding(s), the
more persuasive the medical opinions or prior administrative medical finding(s) will be." 20
C.F.R. § 404.1520c(c)(1). In articulating how she considers the supportability factor, an ALJ
may properly consider that the physician's own treatment notes do not support the physician's
opinion, that the physician did not consider certain evidence, or that the physician did or did not
provide a detailed explanation for the opinion. Starman v. Kijakazi, 2021 WL 4459720, at *4
(E.D. Mo. Sept. 29, 2021) (listing cases). The consistency factor states that "[t]he more
consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other
medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)
or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

---

[4] The other factors include the relationship with the claimant, specialization, and other factors which can include
whether additional evidence was submitted after the date of the opinion. 20 C.F.R. § 404.1520c(c)(3-5).

In this case, the ALJ appropriately considered Dr. Politte's opinion.  First, to the extent that Dr. Politte provided an opinion that Plaintiff was disabled, such a legal determination is reserved to the Commissioner and the ALJ appropriately did not consider such statements persuasive.  KKK ex rel. Stoner v. Colvin, 818 F.3d 364, 371 (8th Cir. 2016) (citing Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).  Second, the ALJ appropriately found that Dr. Politte's opinion was not consistent with the record as a whole.  As noted above and by the ALJ, notwithstanding Plaintiff's complaints of disabling pain, lack of function (especially in his neck), and inability to do many activities of daily living, his examinations were mostly normal (including muscle tone and strength, range of motion, and sensation), his mental state was mostly normal (except for some anxiety) and he was able to participate in testing and care without any somatic complaints, he had some improvement with medication, and he did not undergo any surgery for his neck condition, he was not prescribed assistive devices, nor did his treatment physicians indicate functional limitations that would last for 12 months or longer (Tr. 26, 28). Whitman v. Colvin, 762 F.3d 701, 706 (8th Cir. 2014) (concluding ALJ properly considered claimant's lack of medical care in considering his allegations of debilitating symptoms).  And, despite his pain, Plaintiff was able to work on cars, was reported as being more active, and was able to resume hobbies and yardwork (Tr. 653).  Dr. Okeke, who performed a functional examination but gave no opinion as to work related limitations, generated test results that were consistent with the other medical evidence.  Accordingly, the ALJ appropriately found that Dr. Politte's assessment of ability to work was not entitled to weight because it was inconsistent with the record as a whole and unsupported by the record.

Plaintiff next argues that ALJ erred in finding that he could return to his past relevant work as an automobile salesperson.  Plaintiff does not elaborate on this claim.  As such, it is

unclear how the Plaintiff believes the ALJ erred.  In any event, he goes on to argue the ALJ failed to fully develop the record as to the physical and mental demands of his past relevant work and his ability to perform the same.  As noted above, there is substantial evidence supporting the ALJ's finding that Plaintiff does not have any severe mental deficits that would make employment untenable.  The ALJ likewise could find that Plaintiff's claims of disabling physical limitations were not entitled to deference in light of the medical and other evidence demonstrating that he was not as functionally limited as stated.  Julin v. Colvin, 826 F.3d 1082, 1089 (8th Cir. 2016) (ALJ permissibly excluded greater limitations from RFC after finding record was not consistent with degree of symptoms alleged).  Moreover, the ALJ was not required to gather additional evidence to support the RFC if there was sufficient evidence in the record.  See Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013) (stating that an ALJ may make decision without obtaining additional medical evidence so long as other evidence in record provides sufficient basis for the decision).

As with the arguments above, Plaintiff also has the burden of demonstrating that he cannot return to his previous employment.  Pates-Fires, 564 F.3d at 942.  Besides making blanket statements, Plaintiff does not specifically indicate how the ALJ erred in finding that he could return to his past relevant work.  Certainly, "the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004).  In this case, Plaintiff stated, in a Work History Report, that he worked as an automobile salesman for over a year in 2007-2008 (Tr. 325).  As part of that job, he informed customers and sold Kia cars with the use of technical knowledge and skills (Tr. 330).  He did not have to use machines, tools, or equipment; and, he walked/stood for 8 hours of the day, sat for 4, kneeled for 1 hour ,and crouched for 30 minutes but did not otherwise climb,

stoop, crawl, handle, grab, grip, or write, type, or handle small objects (Tr. 330).   He also

reported no carrying or lifting (with the heaviest thing he lifted less than ten pounds) (Tr. 330).

The ALJ repeated these self-reported job functions in her opinion (Tr. 29).   The ALJ further

found that the VE testified that that, given Plaintiff's age, education and work experience and the

specific functional limitations found (based on the record as a whole), Plaintiff was able to return

to work as an automobile salesperson as the job is typically performed (Tr. 29).

In determining that a claimant can return to past relevant work, the ALJ must "fully

investigate and make explicit findings as to the physical and mental demands of a claimant's past

relevant work and to compare that with what the claimant herself is capable of doing before the

ALJ determines that she is able to perform her past relevant work."  Young v. Astrue, 702 F.3d

489, 491 (8th Cir. 2016) (quotation marks, editing marks, and citation omitted).  The ALJ did not

err in finding that Plaintiff could return to his past work.  First, the ALJ appropriately referred to

the specific section of the Dictionary of Occupational Titles and the VE's testimony in

considering Plaintiff's ability to return to work as an automobile salesperson.  See Pfitzner v.

Apfel, 169 F.3d 566, 589 (8th Cir. 1999).   The ALJ further made explicit findings as to what

Plaintiff was capable of doing and his functional limitations, which were included in the

hypothetical posed to the VE.  Young, 702 F.3d at 492 ("The ALJ was next required to compare

these demands of Young's past factory work with Young's RFC to perform light work because

such a comparison is essential to a determination that she is capable of performing her past

relevant work." (quotation marks and citation omitted)).  At most, Plaintiff faults the manner in

which the ALJ wrote her opinion.  Such deficiencies in opinion writing, however, do not warrant

to reversal.  See Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir. 2005) (internal quotation

marks and citations omitted) ("While a deficiency in opinion-writing is not a sufficient reason to

set aside an ALJ's finding where the deficiency has no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand." (editing marks, quotation marks and citation omitted)).

* * * * *

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly, **IT IS HEREBY ORDERED** that the decision of the Commissioner is **affirmed**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 30th day of January, 2024

                     ***/s/ John M. Bodenhausen***
                     JOHN M. BODENHAUSEN
                     UNITED STATES MAGISTRATE JUDGE